FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

PETROSAUDI OIL SERVICES
(VENEZUELA) LTD.,
  *Claimant-Appellant,*

  v.

ALL FUNDS HELD IN ESCROW
BY CLYDE AND CO. IN THE
UNITED KINGDOM AS DAMAGES
OR RESTITUTION IN
PETROSAUDI V. PDVSA
UNCITRAL ARBITRATION,
  *Defendant,*

CLYDE & CO LLP,
  *Real-party-in-interest.*

No. 21-56228

D.C. No.
2:20-cv-08466-
DSF-PLA

OPINION

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PETROSAUDI OIL SERVICES
(VENEZUELA) LTD.,
*Claimant-Appellant,*

v.

ALL FUNDS HELD IN ESCROW
BY CLYDE AND CO. IN THE
UNITED KINGDOM AS DAMAGES
OR RESTITUTION IN
PETROSAUDI V. PDVSA
UNCITRAL ARBITRATION,
*Defendant,*

CLYDE & CO LLP,
*Real-party-in-interest.*

No. 22-55025

D.C. No.
2:20-cv-08466-
DSF-PLA

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted October 3, 2022
Seattle, Washington

Filed June 13, 2023

Before:  William A. Fletcher, Mark J. Bennett, and Jennifer Sung, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Civil Forfeiture

The panel affirmed the district court's interlocutory orders entered as part of a civil forfeiture suit brought by the United States against a $380 million arbitration award fund, the majority of which is held in the United Kingdom.

The fund belongs to PetroSaudi Oil Services (Venezuela) Ltd., a private oil company incorporated in Barbados, which PetroSaudi won the award in an arbitration proceeding against Petroleos de Venzuela, S.A., a Venezuelan state energy company.  The portion of the fund held in the United Kingdom is held in an account controlled by the High Court of England and Wales.  The Government sought forfeiture of the fund on the ground that it derived from proceeds of an illegal scheme to steal one billion dollars from the Malaysian sovereign wealth fund.

PetroSaudi challenged two district court orders:  a warrant authorizing the arrest and seizure of any money released from the fund by the High Court, and a protective

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

order directing PetroSaudi to deposit in the district court any money released to it from the fund after entry of the order.

Ordinarily, federal courts of appeals have appellate jurisdiction to review only "final decisions of the district courts." 28 U.S.C. § 1291. Under the collateral order doctrine, the court has appellate jurisdiction to review an interlocutory order by a district court denying a defense of sovereign immunity. The panel held that PetroSaudi's appeal from the district court's order denying its motion to dismiss on the basis of foreign sovereign immunity and authorizing the arrest and seizure of the fund fell within this exception. In addition, 28 U.S.C. § 1292(a)(1) provides appellate jurisdiction to review interlocutory orders concerning injunctions. The panel held that PetroSaudi's appeal from the district court's protective order under 18 U.S.C. § 983 fell within this exception. Accordingly, the court had jurisdiction to consider the appeals of the two orders.

PetroSaudi argued that both of the district court's orders were inconsistent with the sovereign immunity of the United Kingdom. The panel assumed arguendo that PetroSaudi, though not itself a sovereign, could assert as a defense the sovereign immunity of the United Kingdom. Relying on the Foreign Sovereign Immunities Act ("FSIA"), PetroSaudi argued that the sovereign immunity of the United Kingdom prevented the district court from exercising jurisdiction over the arbitration award fund and issuing its two orders. The panel held that PetroSaudi's argument failed. The FSIA specifies a number of exceptions to immunity. The parties disagreed on the proper reading of 28 U.S.C. § 1609, but both parties agreed that FSIA only protected from "attachment arrest and execution" property that is owned by a foreign sovereign. The panel held that PetroSaudi's

premise that the fund was the property of the United Kingdom or of the High Court was unfounded. The panel held that PetroSaudi rather than the United Kingdom owned the arbitration fund. The panel concluded that the sovereign immunity of the United Kingdom, as codified in the FSIA, did not protect the arbitration award fund from the two orders issued by the district court.

In the alternative, PetroSaudi argued that the doctrine of prior exclusive jurisdiction precluded the district court from issuing the two orders. The doctrine allows the court that has first acquired jurisdiction over the *res* to adjudicate rights to that *res* without interference from another court that might later seek to acquire jurisdiction over it and to adjudicate rights to it. The panel held that the doctrine did not apply to these appeals because there was only one *in rem* suit—the civil forfeiture suit in the United States district court. The High Court proceedings were not themselves, nor were they part of, an *in rem* or *quasi in rem* suit. The panel concluded that because the doctrine of prior exclusive jurisdiction did not apply, the High Court's present control of the arbitration fund was irrelevant.

Finally, PetroSaudi argued that the district court did not have jurisdiction to issue the protective order on December 9, 2021, requiring PetroSaudi to deposit in the court any money released from the fund to PetroSaudi after the date of that order. The panel held that because the district court had *in rem* jurisdiction over the fund, it did not need *in personam* jurisdiction over PetroSaudi to issue an order preserving the fund. It followed that under its broad *in rem* jurisdiction in civil forfeiture suits, a district court could issue injunctions to preserve the availability of property subject to civil forfeiture. The district court could order PetroSaudi to deposit in the district court any money released to it from the

fund.  Second, PetroSaudi's appeal of the district court's October 14, 2021, order, issuing a warrant authorizing attachment and seizure of any portion of the fund that has been or may be released by the High Court, did not deprive the district court of jurisdiction to issue the protective order on December 9.  The panel held that at the time of the filing of the appeal from the district court's October 14 order, the district court had already issued an order whose purpose was to prevent improper dissipation of the *res*.  The purpose of its subsequent protective order issued on December 9, was to further the purpose of its October 14 order.  The district court therefore had authority under its *in rem* jurisdiction to issue the 18 U.S.C. § 983(j) protective order requiring PetroSaudi to deposit any funds that might be released to them or come into their possession.

The panel concluded that the district court had the authority to exercise *in rem* jurisdiction over the arbitration award fund.  In the exercise of this jurisdiction, the district court had the authority to issue the arrest warrant authorizing the attachment and seizure of any portion of the fund released by or retained pursuant to the orders of the High Court and to issue the §983 protective order preserving assets of the fund.

## COUNSEL

Richard B. Raile (argued), David B. Rivkin Jr., Jonathan R. Barr, Kendall E. Wangsgard, Mark W. DeLaquil, and Lee A. Casey, Baker & Hostetler LLP, Washington, D.C.; Jonathan B. New, Baker & Hostetler LLP, New York, New York; Dyanne J. Cho, Baker & Hostetler LLP, Los Angeles, California; for Claimant-Appellant.

Joshua L. Sohn (argued) and Barbara Y. Levy, Trial Attorneys; Deborah Connor, MLARS Chief; Kevin O'Driscoll, Deputy Assistant Attorney General; Kenneth A. Polite Jr., Assistant Attorney General; United States Department of Justice; Washington, D.C.; Jonathan Baum, Trial Attorney; Office of the United States Attorney; Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

The United States ("the Government") initiated a civil forfeiture suit in federal district court against a $380 million arbitration award fund, the majority of which is held in the United Kingdom. The fund belongs to PetroSaudi Oil Services (Venezuela) Ltd. ("PetroSaudi"), a private oil company incorporated in Barbados. PetroSaudi won the award in an arbitration proceeding against Petróleos de Venezuela, S.A. ("PDVSA"), a Venezuelan state energy company. The portion of the fund held in the United Kingdom ("the fund") is held in an account controlled by the High Court of England and Wales ("the High Court"). The Government seeks forfeiture of the fund on the ground that it derives from proceeds of an illegal scheme to steal one billion dollars from the Malaysian sovereign wealth fund 1Malaysia Development Berhad ("1MDB").

In separate interlocutory appeals, PetroSaudi challenges two orders entered by the district court. One is a warrant authorizing the arrest and seizure of any money released from the fund by the High Court. The other is an order directing PetroSaudi to deposit in the district court any money released to it from the fund after entry of the order. The appeals have been consolidated in our court.

We affirm the district court in both appeals.

## I. Factual Background

The following narrative relies on factual allegations in the Government's Third Amended Complaint and on matters of which we take judicial notice. At this stage of the litigation, the district court accepted the allegations as true

and construed them in the light most favorable to the non-moving party, the Government. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). We do the same.

## A. Money Stolen from 1MDB

The Government seeks forfeiture of the arbitration award fund under 18 U.S.C. § 981. Section 981 subjects property to forfeiture if it was "involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1956]," *id.* § 981(a)(1)(A), or if it "constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. § 1956]," *id.* § 981(a)(1)(C). The arbitration award fund is traceable to money stolen from 1MDB and laundered through PetroSaudi in violation of § 1956, a federal anti-money laundering statute.

PetroSaudi International Ltd. ("PSI") is a private oil services company incorporated in Saudi Arabia. Tarek Obaid is a co-founder and CEO of PSI who initially held a fifty percent stake in the company. In 2013, Obaid became PSI's sole stockholder. Through PSI and various subsidiaries of PSI, Obaid worked with 1MDB insiders to steal one billion dollars from 1MDB.

In September 2009, 1MDB agreed to participated in a joint drilling venture with PetroSaudi Holdings (Cayman) Ltd., a wholly-owned subsidiary of PSI. 1MDB agreed to contribute $1 billion in cash, and PSI agreed to contribute drilling rights worth $2.7 billion it claimed to own in Turkmenistan and Argentina. PSI fraudulently represented both the value and the ownership of the drilling rights.

Obaid transferred to PSI $300 million of 1MDB's $1 billion contribution to the joint venture. He subsequently

transferred $185 million of that $300 million from PSI to PetroSaudi Oil Services Ltd. ("PSOSL"). PSOSL used at least $179.6 million of this money to fund the Mariscal Sucre project, an oil-and-gas drilling project with PDVSA in Venezuela. Obaid also used additional amounts of 1MDB's contribution to purchase assets for himself and others, including luxury real estate properties located in the United States.

PSOSL operated a drillship, the *Discoverer*, during the Mariscal Sucre project. Obaid later purchased a second drillship, the *Saturn*, to expand the scope of the project. The *Saturn* was purchased using funds from the *Discoverer*'s operations and from proceeds of a bond issue secured by the *Discoverer* and *Saturn*. Appellant PetroSaudi, a newly created PSI subsidiary, operated the *Saturn* and assumed control over the *Discoverer* contract with PDVSA.

## B. The Arbitration Dispute

In 2015, PDVSA challenged the adequacy of PetroSaudi's performance in the Mariscal Sucre project. At multiple points, PDVSA ordered the *Saturn* to stop operations and refused to pay PetroSaudi's drilling invoices. As provided by the joint venture contract, the parties submitted their dispute to a Paris-based arbitration tribunal.

While the arbitration was pending, the arbitration tribunal ordered the parties to create an escrow account controlled by Clyde & Co., a United Kingdom-based law firm that was representing PetroSaudi in the arbitration. The tribunal ordered PDVSA to place $500 million— representing the amount of PetroSaudi's unpaid invoices under the drilling contract—into the escrow account. On July 17, 2020, PetroSaudi prevailed in the arbitration and was awarded approximately $380 million. At the time of the

ruling, the escrowed amount was approximately $329 million. The arbitration decision required that all of the escrowed fund be used in partial satisfaction of the arbitration award.

### C. Subsequent Litigation Over the Arbitration Decision

On July 22, 2020, PDVSA applied to the Paris Court of Appeal to set aside the arbitration decision. In August 2020, PDVSA obtained an interim injunction from the High Court in the United Kingdom preventing Clyde & Co. from making payments to PetroSaudi while the Paris litigation was ongoing. On October 23, 2020, the High Court discharged the interim injunction. Relying on the arbitration tribunal's decision, the High Court found that the "credit balance [of the escrow account] is confirmed as belonging to [PetroSaudi]." The High Court did not consider PDVSA's pending application in the Paris Court of Appeal to be a sufficient ground on which to delay implementation of the arbitration award.

However, on September 16, 2020, the Government had begun a civil forfeiture proceeding against the arbitration award fund in the U.S. District Court for the Central District of California. The Government alleged that the fund, the defendant *res* in the suit, was subject to forfeiture because it was the proceeds of "(i) a foreign offense involving the misappropriation of public funds"; "(ii) wire fraud"; or "(iii) international transportation or receipt of stolen or fraudulently obtained property . . . and receipt of stolen money . . . , each of which is a specified unlawful activity under [18 U.S.C. § 1956], and a conspiracy to commit such offenses." The district court had federal subject matter jurisdiction pursuant to 28 U.S.C. § 1355 because the Government plausibly alleged that "acts or omissions giving

rise to the forfeiture" took place in the Central District of California.  28 U.S.C. § 1355(b)(1)(A).  In particular, the Government alleged that money stolen from 1MDB had been laundered through the Central District of California and had been used to purchase luxury properties located there.

On October 14, 2020, the district court issued a warrant authorizing the arrest and seizure of "all funds held in escrow by Clyde & Co. in the United Kingdom as damages or restitution" in the arbitration between PetroSaudi and PDVSA.  On November 13, 2020, PetroSaudi filed a claim in the district court pursuant to Rule G of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and 18 U.S.C. § 983(a)(4)(A), asserting a "vested ownership interest" in the fund.

The district court's warrant was served on Clyde & Co. in London.  The Government threatened to prosecute Clyde & Co. if it transferred the fund to PetroSaudi.  Fearing criminal and civil liability in the United States, Clyde & Co. refused to disburse any of the funds from the escrow account.  PetroSaudi asked the High Court to order Clyde & Co. to disburse money from the fund, consistent with that court's October 2020 decision.  In the alternative, PetroSaudi asked the High Court to order Clyde & Co. to transfer the fund to the High Court.  On February 26, 2021, the High Court denied PetroSaudi's requested relief.

On March 9, 2021, the district court granted PetroSaudi's motion to dismiss the Government's First Amended Complaint.  The court recalled the outstanding arrest warrant and denied the Government's motion for a protective order. PetroSaudi then began a new proceeding in the High Court against Clyde & Co.  Because the district court had recalled

its warrant, Clyde & Co. was no longer at risk of criminal and civil liability in the United States. On March 23, 2021, the High Court granted PetroSaudi's motion to transfer the fund from Clyde & Co.'s escrow account to the Court Funds Office. It also granted PetroSaudi's motion to disburse money from the fund to cover PetroSaudi's legal and business expenses.

Meanwhile, the civil forfeiture suit continued in the district court. On October 14, 2021, the court denied a motion to dismiss the Government's Third Amended Complaint. On that same date, the district court issued a new warrant authorizing arrest and seizure of "any portions of the Defendant Assets that have been or may be released by the High Court of Justice." On December 9, 2021, the district court issued a protective order under 18 U.S.C. § 983, requiring PetroSaudi and its agents "to deposit [in the district court] any of the Defendant funds that might be released to them" after the issuance of the court's protective order. The protective order did not require PetroSaudi and its agents to deposit in the court any funds that had been released from the fund before the issuance of the order.

On November 4, 2021, PetroSaudi filed a new application in the High Court asking for an interim declaration that PetroSaudi's "legal representatives, Armstrong Teasdale, have lawful authority under the laws of England and Wales to continue to comply with the [March 23, 2021, order]" from the High Court. The Government engaged the United Kingdom's National Crime Agency ("NCA"), and on December 15, 2021, the NCA filed a request for a prohibition order that would freeze the fund.

On April 13, 2022, the High Court granted its own prohibition order. The purpose of such a prohibition order

is to "assist an overseas authority by freezing property which may become the subject of an external (recovery) order in that country."  The High Court's prohibition order "prevent[s] [PetroSaudi] from taking money out of the Fund" and "diminishing its value or granting an interest in it."  Justice Griffiths of the High Court noted that "[he did] not think . . . that [the High Court] should seek actively to protect the Fund from friendly foreign authorities with whom [the U.K.] has a Treaty obligation of mutual assistance and from which a Request in proper form has been received."  Although the High Court was "willing in principle for exclusions for legal and business expenses to be considered," it was not satisfied that the evidence before it justified disbursements for such expenses.

The High Court subsequently moved the fund out of the Court Funds Office and placed it with a receiver.  Initially, the receiver was directed to hold the fund "as agent for the Court Funds Office."  The High Court later changed its order to direct that the receiver hold the fund as "an officer" of the court, rather than as its "agent."

PetroSaudi appealed from the district court's order issuing a warrant authorizing arrest and seizure, issued on October 14, 2021.  It separately appealed from the district court's protective order, issued on December 9, 2021.  We have consolidated the appeals and heard them together.  We affirm the district court in both appeals.

## II. Standard of Review

"The existence of sovereign immunity and subject matter jurisdiction under the [Foreign Sovereign Immunities Act ("FSIA")] are questions of law which we review *de novo*." *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 522 (9th Cir. 2001); *see also Britton v. Co-op Banking Grp.*,

916 F.2d 1405, 1409 (9th Cir. 1990) ("We review jurisdictional challenges *de novo*.").

## III. Appellate Jurisdiction

Ordinarily, federal courts of appeals have appellate jurisdiction to review only "final decisions of the district courts." 28 U.S.C. § 1291. There are exceptions, however, that permit parties to appeal before a final judgment. Under the collateral order doctrine, we have appellate jurisdiction to review an interlocutory order by a district court denying a defense of sovereign immunity. *See Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 859 F.2d 1354, 1358 (9th Cir. 1988) (holding that the denial of a motion to dismiss for sovereign immunity is an appealable collateral order). PetroSaudi's appeal from the district court's order denying its motion to dismiss on the basis of foreign sovereign immunity and authorizing the arrest and seizure of the fund falls under this exception. Additionally, 28 U.S.C. § 1292(a)(1) gives us appellate jurisdiction to review interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." PetroSaudi's appeal from the district court's protective order under 18 U.S.C. § 983 falls under this exception. Accordingly, we have jurisdiction to hear the consolidated appeals.

## III. Analysis

PetroSaudi makes several arguments. We address them in turn.

## A. Foreign Sovereign Immunity

PetroSaudi argues that both of the district court's orders are inconsistent with the sovereign immunity of the United Kingdom. We are willing to assume *arguendo* that

PetroSaudi, though not itself a sovereign, can assert as a defense the sovereign immunity of the United Kingdom. *Cf. Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1123–24 (9th Cir. 2010) (holding that a district court can raise the issue of foreign sovereign immunity *sua sponte*). We note that the Second Circuit took a different approach in *United States v. Assa Co.*, 934 F.3d 185, 188–190 (2nd Cir. 2019), holding that the FSIA does not apply in cases where a foreign state is not the party being sued, including in *in rem* forfeiture suits brought directly against property. *Id.* at 189. Accordingly, the Second Circuit held that "[t]he FSIA does not create jurisdiction over, and does not immunize a foreign state's property from, *in rem* civil-forfeiture actions." *Id.* at 190. We need not decide if the Second Circuit's approach was correct, as we reject PetroSaudi's argument on a different ground.

Relying on the FSIA, PetroSaudi argues that the sovereign immunity of the United Kingdom prevents the district court from exercising jurisdiction over the arbitration award fund and issuing its two orders. For the reasons that follow, PetroSaudi's argument fails.

The background assumption of the FSIA is that a foreign sovereign and its assets are immune from suit in state and federal courts in the United States. *See* 28 U.S.C. §§ 1604, 1609. Against this background assumption, the FSIA specifies a number of exceptions to immunity. In the words of the Supreme Court:

> The [FSIA] establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state. Under the Act, a "foreign state *shall* be immune from

the jurisdiction of the courts of the United States and of the States" unless one of several statutorily defined exceptions applies. [28 U.S.C.] § 1604.

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610–11 (1992); *see also Verlinden B. V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488–89 (1983) (same).

The FSIA's "statutorily defined exceptions" to immunity from suit are found in 28 U.S.C. § 1605 (*inter alia*, waiver by the foreign state, commercial activity of the foreign state), §§ 1605A and 1605B (terrorism by a foreign state), and § 1606 (extent of liability).  Separately, 28 U.S.C. § 1609 provides that the property of a foreign state held in the United States is immune from attachment, arrest and execution, except as provided in § 1610 (property involved in commercial activity) and § 1611 (property of the foreign central bank or of the military).

The parties disagree on the proper reading of § 1609. PetroSaudi contends that only foreign-sovereign-owned property *in* the United States is eligible for attachment, arrest, and execution under § 1609 and that property *outside* the United States enjoys complete immunity.  The Government, on the other hand, contends that § 1609 protects from attachment, arrest, and execution only property that is owned by a foreign sovereign and is located *in* the United States.  Thus, according to the Government, property owned by a foreign sovereign and held *outside* the United States enjoys no protection under the FSIA.

We need not decide this particular question because both parties agree that FSIA only protects from "attachment arrest and execution" property that is owned by a foreign

sovereign.  The essential premise of PetroSaudi's sovereign immunity argument is that the arbitration award fund is the property of the United Kingdom, or—what amounts to the same thing—the property of the High Court.  PetroSaudi's sovereign immunity argument in its brief begins:

> The district court erred in failing to dismiss this civil-forfeiture action on sovereign-immunity grounds.  It is settled in this Circuit that sovereign immunity forecloses jurisdiction over *property owned by a foreign sovereign* that is "located outside the United States."

Blue Brief at 16 (emphasis added);  *see also*, *e.g.*, Blue Brief at 27 ("The district court ignored that before it was a motion to dismiss the Third Amended Complaint, and that complaint sought—and still seeks—to forfeit property owned by the United Kingdom."); *id.* at 31 ("But sovereign immunity precludes service of the arrest warrant on the High Court, which owns defendant."); *id.* at 34 ("The laws of the United Kingdom establish the High Court's ownership of the funds . . . .").

PetroSaudi's premise that the fund is the property of the United Kingdom or of the High Court is unfounded.  In the district court, the Government was willing to concede *arguendo* that the fund is the property of the United Kingdom.  But, as explained in its brief to us, the Government was responding to an expert declaration on United Kingdom law filed by PetroSaudi only two weeks before the scheduled hearing date in the district court.  According to that declaration, *W.A. Sherratt Ltd v. John Bromley (Church Stretton) Ltd.* [1985] 1 QB 1038, stands

for the proposition that a party paying money into court relinquishes ownership of the money. Therefore, according to the declaration, the arbitration award fund became the property of the United Kingdom when it was deposited with the High Court. Refuting the declaration on this point would have required the Government to retain and present a declaration of its own expert, and to seek a postponement of the hearing in the district court. Instead of seeking to rebut the expert declaration, the Government relied on a different argument to defeat PetroSaudi's claim of sovereign immunity in the district court.

The Government has now had sufficient time to respond to PetroSaudi's argument that the United Kingdom owned the arbitration award fund once PetroSaudi deposited the fund in the High Court. The Government points out that PetroSaudi's expert declaration relied on dictum in *Sherratt* to support the proposition that United Kingdom became the owner of the fund. The declaration failed to mention a later-decided case that limits *Sherratt*'s dictum to the unexceptional proposition that a party paying money into the custody of the court gives up control of the property. However, that party does not relinquish any ownership rights it may have. *See Crumpler & Anor v. Candey Ltd*, [2018] EWCA (Civ) 2256 [87]–[88], [2019] WLR 2145. Based on *Crumpler*, we have no doubt that PetroSaudi rather than the United Kingdom owns the arbitration award fund. Indeed, the High Court repeatedly and unambiguously specified that the arbitration award fund is "undoubtedly the property of [PetroSaudi] alone," and that the fund "belongs to [PetroSaudi]."

We therefore conclude that the sovereign immunity of the United Kingdom, as codified in the FSIA, does not

protect the arbitration award fund from the two orders issued by the district court.

### B. Prior Exclusive Jurisdiction

In the alternative, PetroSaudi argues that the doctrine of prior exclusive jurisdiction precludes the district court from issuing the two orders.  Stated broadly, the doctrine provides that "when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." *State Eng'r of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.,* 339 F.3d 804, 809 (9th Cir. 2003) (internal quotation omitted).

The doctrine allows the court that has first acquired jurisdiction over a *res* to adjudicate rights to that *res* without interference from another court that might later seek to acquire jurisdiction over it and to adjudicate rights to it.  The doctrine applies to suits "brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property." *United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463, 477 (1936) (citations omitted).  "If the two suits are in rem or quasi in rem, so that the court must have possession or control of the res in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other." *Id.* (citation omitted).

The government argues that the doctrine of prior exclusive jurisdiction does not apply because 28 U.S.C. § 1355(b)(2), which governs federal court jurisdiction in civil forfeiture cases, displaces the doctrine by expressly authorizing U.S. courts to exercise jurisdiction over property that has been seized by a foreign government.

We need not decide if the government is correct, as even assuming the doctrine is applicable here, we reject it for a different reason.  The doctrine does not apply to the appeals before us because there is only one *in rem* suit—the civil forfeiture suit in the United States district court.  The High Court proceedings are not themselves, nor are they part of, an *in rem* or *quasi in rem* suit.  *In rem* suits "involv[e] or determin[e] the status of a thing, and therefore the rights of persons generally with respect to that thing."  *In Rem*, Black's Law Dictionary (11th ed. 2019).  *Quasi in rem* suits "involv[e] or determin[e] the rights of a person having an interest in property located within the court's jurisdiction."  *Quasi In Rem*, Black's Law Dictionary (11th ed. 2019).  In the High Court proceedings, no party has asked the High Court to determine the status of the arbitration award fund or the rights of parties with respect to the fund.  The parties have deposited the money in the High Court solely to preserve the fund while other proceedings determine rights to the fund.

In the August 2020 proceeding before the High Court, PDVSA applied for an interim injunction that would prevent Clyde & Co. from disbursing the fund while PDVSA's appeal from the arbitration decision was pending in the Paris Court of Appeal.  The Paris Court of Appeal, not the High Court, was responsible for deciding the merits of the underlying arbitration proceedings that determined substantive rights with respect to the fund.  In the February and March 2021 proceedings before the High Court, PetroSaudi wanted Clyde & Co. to release money from the escrow account.  But Clyde & Co. did not refuse to release money from the fund because it disputed PetroSaudi's ownership of the fund.  Rather, it was worried that a transfer might violate United States law.  The High Court acted to

preserve the fund. It did not seek to decide for itself the merits of claims to the fund. Finally, in the April 2022 proceedings before the High Court, the NCA applied for, and the High Court granted, a Prohibition Order to freeze the fund in order to facilitate the Government's civil forfeiture suit in the district court. The NCA did not dispute that PetroSaudi owns the arbitration award fund, subject to possible claims by others.

In short, the High Court did not take possession and control of the arbitration award fund, as a "subject of [an *in rem* or *quasi in rem* suit] in order to proceed with the [*in rem* or *quasi in rem*] cause and to grant the relief sought." *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935). Because there is only one *in rem* case, the doctrine of prior exclusive jurisdiction does not apply, and the High Court's present control of the arbitration award fund is irrelevant.

## C. Protective Order Jurisdiction

Finally, PetroSaudi argues that the district court did not have jurisdiction to issue the protective order on December 9, 2021. The district court's protective order required PetroSaudi to deposit in the court any money released from the fund to PetroSaudi after the date of the order. First, PetroSaudi argues that the district court did not have *in personam* jurisdiction over PetroSaudi and therefore could not order it to deposit in the district court any money released to it from the fund. Second, PetroSaudi argues that its appeal of the district court's October 14 order deprived the district court of jurisdiction to issue the protective order on December 9. For the reasons that follow, both arguments fail.

### 1.  Lack of Personal Jurisdiction over PetroSaudi

Because the district court had *in rem* jurisdiction over the fund, it did not need *in personam* jurisdiction over PetroSaudi to issue an order preserving the fund.  The court could therefore require PetroSaudi to deposit in the district court any money improperly released from the fund to PetroSaudi after the date of its order.  The court's *in rem* jurisdiction gave it the authority "against the world" to protect the fund against improper dissipation.  That is, in civil forfeiture actions, a court exercises *in rem* jurisdiction and must "adjudicate the rights of the government to the property as against the whole world."  *United States v. 51 Pieces of Real Prop., Roswell, N.M.*, 17 F.3d 1306, 1309 (10th Cir. 1994).  To do so, courts need jurisdiction to issue orders protecting and preserving the *res*.

*In rem* civil forfeiture jurisdiction "is predicated on the 'fiction of convenience' that an item of property is a person against whom suits can be filed and judgments entered." *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008) (citing *United States v. Ten Thousand Dollars ($10,000) in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir. 1988)).  "The fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties."  *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 87 (1992).

Traditionally, "the court must have actual or constructive control over the res when an *in rem* forfeiture suit is initiated." *Approximately $1.67 Million*, 513 F.3d at 996 (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 58 (1993)).  However, 28 U.S.C. § 1355 relaxed this requirement.  Constructive or actual control of the *res* is no

longer necessary. *Id.* at 997–98. Section 1355 provides for the exercise of jurisdiction by a federal court over property subject to forfeiture, including property located in a foreign country, in any judicial district "in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As we explained in *Approximately $1.67 Million*, "Where an act or omission giving rise to the forfeiture occurs in a district, the corresponding district possesses jurisdiction over the forfeiture action regardless of its control over the res." *Id.* at 998.

We held in *United States v. Obaid*, 971 F.3d 1095, 1100–01 (9th Cir. 2020) (quoting *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 453 (2004)), that "in an *in rem* [civil forfeiture] action, 'jurisdiction over the person [who owns the property] is irrelevant if the court has jurisdiction over the property.'" We explained, "In an *in rem* action, the focus for the jurisdictional inquiry is the [property]. . . , rather than [the property owner's] personal contacts with the forum." *Id.* at 1106.

Read together, *Approximately $ 1.67 Million* and *Obaid* establish that a district court has *in rem* jurisdiction over property not within its actual or constructive control, even when it lacks personal jurisdiction over the property's owner. It follows that under its broad *in rem* jurisdiction in civil forfeiture suits, a district court may issue injunctions to "preserve the availability of property subject to civil forfeiture." 18 U.S.C. § 983(j)(1). We recognize that PetroSaudi may refuse to comply with the order and that the district court may have difficulty enforcing compliance. But limitations on the ability of the court to enforce compliance "determines only the effectiveness of the forfeiture orders of the district courts, not their jurisdiction to issue those

orders." *United States v. All Funds in Acct. in Banco Espanol de Credito, Spain*, 295 F.3d 23, 27 (D.C. Cir. 2002).

## 2. Effect of PetroSaudi's Appeal of the District Court's October 14 Order

On November 4, 2021, PetroSaudi appealed the district court's October 14 order issuing a warrant authorizing attachment and seizure of any portion of the fund that has been or may be released by the High Court. PetroSaudi argues that this appeal precluded the district court from issuing its protective order on December 9. PetroSaudi relies on the general rule that "[t]he filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *United States v. Ortega-Lopez*, 988 F.2d 70, 72 (9th Cir. 1993) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

This general divestment rule is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (quoting *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988)). It "is a rule of judicial economy and not one that strips the district court of subject matter jurisdiction." *Id.* at 1121.

The divestment rule is subject to exceptions. For example, "[a] district court may retain jurisdiction when it has a duty to supervise the status quo during the pendency of an appeal, or in aid of execution of a judgment that has not been superseded." *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997) (internal citation omitted). A version of this exception exists here. PetroSaudi appealed from the district

court's October 14 order granting the Government's application for a warrant authorizing attachment and seizure of "any portions of the Defendant Assets that have been or may be released by the High Court of Justice." That is, at the time of the filing of the appeal from its October 14 order, the district court had already issued an order whose purpose was to prevent improper dissipation of the *res*. The purpose of its subsequent protective order, issued on December 9, was to further the purpose of its October 14 order. The district court thus had authority under its *in rem* jurisdiction to issue the § 983(j) protective order requiring PetroSaudi and any agents "to deposit any of the Defendant funds that might be released to them . . . , or that they otherwise come into possession."

## Conclusion

We hold that the district court had the authority to exercise *in rem* jurisdiction over the arbitration award fund. The sovereign immunity of the United Kingdom is in no way affected by the district court's exercise of jurisdiction. In the exercise of this jurisdiction, the district court had the authority to issue the arrest warrant authorizing the attachment and seizure of any portion of the fund released by or retained pursuant to the orders of the High Court and to issue the § 983 protective order preserving assets of the fund.

**AFFIRMED.**